UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMAL LAURENT,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                  17-CV-3300 (PKC)(LB)

        - against-

MICHAEL BORECKY, M.D.; ROBERT
EDWIN, CLINICAL DIRECTOR,

                Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Jamal Laurent, appearing *pro se* and proceeding *in forma pauperis*, brings this

*Bivens* action against Defendants Michael Borecky, M.D. and Robert Edwin, M.D., alleging

violations of the Fifth and Eighth Amendments in connection with his medical treatment in prison.

Pending before the Court is Defendants' motion to dismiss the complaint in its entirety. For the

reasons stated herein, Defendants' motion is granted as to Defendant Borecky and denied as to

Defendant Edwin.

## BACKGROUND

### I.    Relevant Facts

Plaintiff alleges that throughout his four-and-a-half years of incarceration at the Brooklyn

Metropolitan Detention Center, he has suffered from "a disturbing and ever present excruciating

pain in [his] lower back", as well as anxiety, pain in his left foot and big toe, numbness and tingling

in his left buttock, migraines, trouble urinating, depression, and fatigue. (Complaint ("Compl."),

Dkt. 1, at 8.)[1] While Plaintiff's complaint describes his prison medical history at length (*id.* at 8-

---

    [1] Page numbers refers to the pagination generated by the CM/ECF system, and not the
document's internal pagination.

11), the Court focuses on those facts that relate to his claims against Defendants. The Court considers Plaintiff's claims against Defendant Borecky and Defendant Edwin in turn.

## A. Interactions with Defendant Borecky

The Complaint describes two specific interactions between Plaintiff and Dr. Borecky. First, Plaintiff alleges that on September 12, 2014, Plaintiff told Dr. Borecky that he wanted an MRI of his back because Plaintiff thought he might have a ruptured or bulging disc. (*Id.* at 10.) Second, in or around February 2015, Dr. Borecky ordered said MRI of the lumbar spine after it was recommended by Plaintiff's neurologist. (*Id.*)

More generally, Plaintiff states that he has "consulted with various medical care providers", including Dr. Borecky, "about the pain [he is] experiencing" but that he is "usually looked upon with utter disbelief after many of the x-ray results c[o]me back negative." (*Id.* at 9.) Plaintiff further alleges that "[a]t times" during his consultation with Dr. Borecky, Borecky has stated, "We're doing all we can, but there isn't much we can do!" (*Id.*)

## B. Interactions with Defendant Edwin

The Complaint also describes two interactions between Plaintiff and Defendant Edwin. First, Plaintiff alleges that in October or November 2013, Edwin denied Plaintiff's referral for an orthopedic consultation "without explanation", instead noting that "[c]onservative treatment [should] be continued with periodic evaluation." (*Id.* at 9-10.) Plaintiff states that the "delay in orthopedic evaluation for 2 ½ years coupled with constant pains and non-diagnosis as to [his] condition has caused extreme hardship as well as interfered with access to treatment and has been a blatant refusal to carry out the specialist['s] recommendations." (*Id..*) Second, Defendant Edwin approved a neurology consultation for Plaintiff in August 2013. (*Id.*)

## II.    Procedural History

On May 30, 2017, Plaintiff filed the instant federal complaint.  (Dkt. 1.)  On March 29, 2018, Defendants filed their motion to dismiss.  (Dkt. 15.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

**DISCUSSION**

Plaintiff alleges deliberate indifference by both Defendants Borecky and Edwin under the Fifth and Eighth Amendments. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). However, "[a] person detained prior to conviction receives protection against mistreatment under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody," *Vargas v. City of New York*, No. 13-CV-3188 (SLT), 2017 WL 1214434, at *11 (E.D.N.Y. Mar. 31, 2017) (citation omitted), and the Second Circuit has held that there is "no reason why the [deliberate indifference] analysis should be different under the Due Process Clause of the Fifth Amendment[,]" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Plaintiff was convicted in his criminal case on March 17, 2015. (Defs.' Br., Dkt. 15-1, at 13). Although Plaintiff alleges deliberate indifference under the Fifth and Eighth Amendments, because none of the conduct or incidents alleged by Plaintiff involving Defendants post-date March 17, 2015, the relevant standard for Plaintiff's claims in this case is deliberate indifference under the Fifth Amendment.

The standard of deliberate indifference includes both subjective and objective components. First, "objectively, the alleged deprivation must be sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Second, "subjectively, the charged official must act with a sufficiently culpable state of mind." *Id*. An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or

4

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court will address Plaintiff's claims against each Defendant in turn.

### A. Defendant Borecky

Plaintiff has not made a single allegation to substantiate his deliberate indifference claim as to Dr. Borecky. In fact, Plaintiff admits that Borecky ordered the MRI that Plaintiff asked for. (Compl. at 10.) While Plaintiff seems, as a general matter, dissatisfied about whether Dr. Borecky was doing all he could, that does not amount to deliberate indifference, especially when Plaintiff has not identified a particular failure by Dr. Borecky. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 389 (S.D.N.Y. 2009). Therefore, Defendants' motion to dismiss is granted as to Defendant Borecky.

### B. Defendant Edwin

As an initial matter, Defendant Edwin approved Plaintiff's 2013 neurology consultation; this cannot constitute deliberate indifference. However, liberally construing Plaintiff's complaint, the Court finds that Plaintiff does allege sufficient facts to sustain his claim that Edwin's denial of Plaintiff's referral for an orthopedic consultation constituted deliberate indifference. (*Id*. at 9-10.)

Plaintiff alleges that in 2013—when he was a pretrial detainee—he was referred for physical therapy and an orthopedic evaluation by a neurologist, but that Defendant Edwin denied the referral and made Plaintiff continue with "[c]onservative treatment", consequently delaying Plaintiff's orthopedic treatment for 2.5 years and causing Plaintiff pain and physical harm. (*Id*.) First, the determination of whether Plaintiff's condition was "sufficiently serious" is a fact-based inquiry. In *Chance*, the Second Circuit put forth a "non-exhaustive list of such factors" that the

Court should consider, including "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). Plaintiff clearly alleges that, as a result of his condition, he has "constant pains", "[l]imited participation in physical activities", and that he "sustain[ed] severe neurological damage". (Compl. at 8-9.) These allegations as to the seriousness of Plaintiff's condition suffice at the motion to dismiss stage. *See Jones v. Westchester Cty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 415 (S.D.N.Y. 2008) (internal quotation marks omitted) (denying motion to dismiss deliberate indifference claim where inmate-plaintiff alleged that "his hips cause[d] him chronic and extreme pain, and that this pain would have been alleviated if he had been given reasonable care").

Second, with respect to the culpability prong of the analysis, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703 (internal citations and quotation omitted). Here, Plaintiff alleges that the prison medical staff, including Defendant Edwin, have "refus[ed] to change treatments" despite evidence that they are ineffective, and chose "easier and less efficacious forms of treatment to be provided which has been a blatant disregard to [his] health." (Compl. at 8, 10.) While such an allegation, without more, could be deemed conclusory and thus insufficient, here, Plaintiff also identifies a specific instance when Defendant Edwin allegedly ordered conservative treatment as an expedient over more effective treatment, thus enabling Plaintiff's deliberate indifference claim to survive as to Edwin.

Finally, Defendant Edwin argues that Plaintiff cannot sustain his *Bivens* action because the Supreme Court "has never recognized a *Bivens* remedy for a [pretrial detainee's] Fifth Amendment due process claim alleging indifference to medical needs." (Defs.' Br., at 14; *see also id.* at 13-20.) Despite the technical merit of this argument, the Court declines to adopt it. While Defendant Edwin is correct that the Supreme Court has not explicitly recognized a Fifth Amendment due process claim for failure to provide medical care under *Bivens*, in *Carlson v. Green*, the Supreme Court "did allow a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care" under the Eighth Amendment. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017) (citing *Carlson v. Green*, 446 U.S. 14 (1980)). The question then becomes: is applying the Eighth Amendment *Bivens* remedy recognized in *Carlson* to an identical claim under the Fifth Amendment creating a "new *Bivens* context, *i.e.*, [is] th[is] case . . . different in a meaningful way from previous *Bivens* cases decided by this Court"? *Id.* Importantly, the Court recognizes that "the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (citation and internal quotation marks omitted).

Although the Supreme Court has not "endeavor[ed] to create an exhaustive list" of what constitutes a "new *Bivens* context", it has elucidated that

> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60.

In *Ziglar,* the respondents, who were pretrial detainees, brought a Fifth Amendment due process claim against a federal prison warden under *Bivens*, based on alleged abuse by guards and

"the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil." *Id.* at 1860. They argued that although their claim was brought under a different constitutional amendment, their claim had "significant parallels" to *Carlson*, where "the Court did allow a *Bivens* claim for prisoner mistreatment[.]" *Id.* at 1864. The Supreme Court found that the respondents' claim presented a "new *Bivens* context" for two reasons. First, it found that "[t]he constitutional right [claimed by the respondents] is different[,] . . . since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth." *Id.* Second, it held that "the judicial guidance available to th[e] warden, with respect to his supervisory duties, was less developed" than in *Carlson* because "[t]he standard for a claim alleging that a warden allowed guards to abuse pre-trial detainees is less clear under the Court's precedents." *Id.* at 1864-65. The Supreme Court concluded that while "[t]he differences between [respondents'] claim and the one in *Carlson* are perhaps small, at least in practical terms[,] [g]iven this Court's expressed caution about extending the *Bivens* remedy, . . . the new-context inquiry is easily satisfied." *Id.* at 1865. Thus, the Supreme Court found, "[t]he Court of Appeals . . . should have held that this was a new *Bivens* context. Had it done so, it would have recognized that a special factors analysis was required before allowing this damages suit to proceed."[2] *Id.* at 1861, 1869 (reversing judgment of Court of Appeals and remanding case for further proceedings).

While this case admittedly also presents a different constitutional right at issue—*i.e.*, deliberate indifference to a detainee's medical needs under the Fifth Amendment instead of the

---

[2] With regard to the "special factors analysis", the Supreme Court reiterated in *Ziglar* that "[t]he Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id*. at 1857 (quoting *Carlson*, 446 U.S. at 18).

Eighth Amendment[3]—unlike *Ziglar*, it bears an extremely strong "resemblance to [one of] the three *Bivens* claims the [Supreme] Court has approved in the past: . . . a claim against prison officials for failure to treat an inmate's asthma." *Id.* at 1861. In fact, the Supreme Court in *Ziglar* specifically noted that unlike the "less clear" standard for alleging that a prison warden allowed guards to abuse pretrial detainees, "[t]he Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Id.* at 1864 (quoting *Estelle*, 429 U.S. at 104). In light of the significant distinctions between *Ziglar* and the instant case, the Court does not find that Plaintiff's claim alleges a "new *Bivens* context".[4]

---

[3] Months before *Ziglar* was decided, the Second Circuit held in *Darnell v. Pineiro* that the plaintiff's pretrial detention claim "implicate[d] the Due Process Clause of the Fourteenth Amendment because it involve[d] state pretrial detainees who are seeking to vindicate their constitutional rights. However, the analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment." 849 F.3d 17, 21 n.3 (2d Cir. 2017); *see also Cuoco*, 222 F.3d at 106 (finding qualified immunity on other grounds but holding, *inter alia*, "the district court correctly concluded that [plaintiff's] claims arise under the Due Process Clause of the Fifth Amendment" because "defendants denied [plaintiff], an unconvicted detainee, treatment needed to remedy a serious medical condition and did so because of [their] deliberate indifference to that need" (citations and internal quotation marks omitted)); *Malinski v. New York,* 324 U.S. 401, 415 (1945) (Frankfurter, J., concurring) ("To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection."); *Ziglar*, 137 S. Ct. at 1877-78 (Breyer, J., dissenting) ("Where the harm is the same, where this Court has held that both the Fifth and Eighth Amendments give rise to *Bivens'* remedies, and where the only difference in constitutional scope consists of a circumstance (the absence of a conviction) that makes the violation here worse, it cannot be maintained that the difference between the use of the two Amendments is 'fundamental.'"); *but see Huckaby v. Bradley*, No. 16-CV-4327 (NLH)(KMW), 2018 WL 2002790, at *4 (D.N.J. Apr. 30, 2018) (finding no *Bivens* remedy for a pretrial detainee alleging a Fifth Amendment due process claim against military personnel for deliberate indifference to a serious medical need).

[4] The Court's finding obviates the need for a "special factors analysis". *Ziglar*, 137 S.Ct. at 1857 ("special factors" analysis required when *Bivens* remedy extended into "any new context").

Accordingly, the Court finds that Defendant has sufficiently stated a deliberate indifference claim against Defendant Edwin. *Jones*, 557 F. Supp. 2d at 415 (denying motion to dismiss deliberate indifference claim where plaintiff-inmate's allegations were neither implausible nor conclusory).

## C. Qualified Immunity

Defendant Edwin argues that even if Plaintiff has stated a claim to survive a motion to dismiss, Edwin is entitled to qualified immunity, because the Supreme Court "has never recognized a *Bivens* remedy for a [pretrial detainee's] Fifth Amendment due process claim alleging indifference to medical needs" (Defs.' Br., at 14; *see also id.* at 13-20), and thus, Plaintiff's constitutional right is not "clearly established," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).[5] The Court disagrees.

"[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). In this Circuit, "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the

---

[5] To the extent Defendant Edwin's argument focuses on the fact that a *Bivens* claim for Fifth Amendment deliberate indifference to medical needs has not yet been recognized by the Supreme Court, the Court believes that this argument does not raise a qualified immunity issue. Rather, as Edwin has otherwise argued and as resolved above, that aspect of his argument relates to whether the *Bivens* remedy should be extended to a claim of deliberate indifference under the Fifth Amendment, and not whether a constitutional right to be free from deliberate indifference exists under the Fifth Amendment. Thus, Edwin would not be entitled to qualified immunity even if he reasonably did not know that he could be sued for being deliberately indifferent to Plaintiff's medical needs, *i.e.,* the remedy, but he would be entitled to qualified immunity if he reasonably did not know that Plaintiff had a constitutional right not to be subjected to deliberate indifference of his medical needs, *i.e.*, the right.

existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).

With respect to the first and third prongs, as explained *supra*, the Court has determined that Plaintiff's constitutional right is one that is "defined with reasonable clarity" and about which Defendant Edwin "would have known" in light of the fact that "[t]he [Supreme] Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner— 'deliberate indifference to serious medical needs.'" *Ziglar*, 137 S. Ct. at 1864; *see Hathaway*, 37 F.3d at 69 ("Assuming that [defendant] was deliberately indifferent to [inmate-plaintiff's] serious medical needs, he is not entitled to qualified immunity because it would not be objectively reasonable for him to believe his conduct did not violate [plaintiff's] rights [under the Eighth Amendment].").  With respect to prong two, the Second Circuit has explicitly recognized a pre-trial detainee's Fifth Amendment Due Process right regarding medical treatment in prison.  *See Darnell*, 849 F.3d at 21 n.3; *Cuoco*, 222 F.3d at 106.

Therefore, the Court finds that Defendant Edwin is not entitled to qualified immunity.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted as to Defendant Borecky and denied as to Defendant Edwin.

SO ORDERED.

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: June 12, 2018
        Brooklyn, New York